UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES** | : |
| v. | Cr. No. 24-cr-183-RC |
| **ERIC STAPLES** | : |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Eric Staples, by his attorney, files this memorandum in aid of sentencing. The defendant respectfully prays that the court sentence him to a period of probation of one to two years. He understands that he must pay a mandatory assessment of $25, as well as $500 in restitution.[1] He has no objection to community service as a condition of probation.

**Defendant's Personal Background**

Eric Staples spent most of his childhood in Michigan. When he was 16, his family moved to Baton Rouge, Louisiana. After his graduation from high school, he went to community college for one semester, while also attending massage school. After receiving his license as a massage therapist, he attended Louisiana State University for two years.

In August of 2016 Mr. Staples married his wife, Laura. Their daughter Ella was born in August, 2018. Laura is a homemaker and a mother. The young married couple lived in the Houston

---

[1] The amount of restitution was an element of the plea agreement between the parties.

1

area for four-plus years and moved to Wyoming in 2021. After a little more than a year, the family moved to Girdwood, Alaska, where Mr. Staples had an opportunity to work at a high-end resort and spa. Unfortunately, when he was charged with the instant offense, a local posted some nasty messages about him on social media. Fearing a backlash, the resort fired him, despite his excellent work record. The family then relocated to Phoenix. Because Mr. Staples did not yet have a massage therapist's license in Arizona, he took work in a call center so that he could continue to support his family. He has now received his Arizona license and is once again working as a massage therapist. He was also teaching massage, but is no longer doing so because the school closed.

**The Offense and Mr. Staples's Acceptance of Responsibility**

While living in Wyoming, Mr. Staples voluntarily attended a debriefing with the FBI. He was represented by Robert Moxley at that interview.

In its memorandum, the government has worked hard to suggest that the defendant was less than candid during that meeting. That allegation is untrue. Counsel has spoken at length to Mr. Moxley, who stated that the FBI agent said that he was satisfied with Mr. Staples's responses and told him that he could anticipate being charged with a misdemeanor in this matter. The government bases its characterization of him as dishonest on the claim that he initially said that he could not remember exactly what he did at the Capitol on January 6. Even if this allegation is true, it should not have an impact on the sentence to be imposed in this case. According to the government's version, all it took to get Mr. Staples to tell the complete truth about what he did was the FBI agent's "pushing back" and telling Mr. Staples that he "knew whether he went into the Capitol

2

building."[2] The fact that the government tries to put so much weight on one insignificant statement at an FBI interview almost three years ago is a telling sign that it has no actual evidence to establish that Mr. Staples was not candid with the FBI.

The government also tries to paint Mr. Staples as a liar by saying that he told the FBI that he had deleted his Facebook page after being shown a post by Reyna, claiming that this is "contrary to his assertion in the PSR" that he deleted his account because he was embarrassed by his actions. (Gov't memo, at 8.) In fact, there is nothing contrary about these statements. Mr. Staples was doxxed, as he told the FBI, and that was a key fact leading to the deletion of his Facebook account. He was also embarrassed by his actions. At the presentence interview – which counsel attended – the probation officer asked Mr. Staples how he felt about his involvement in the events of January 6. It was in that context that he stated he was embarrassed. Although undersigned counsel was not present at the FBI interview, she feels confident in saying that the agent did not ask Mr. Staples about his feelings. In the hundreds of FBI debriefings that she has attended in her career, she has never once heard an agent inquire about a defendant's feelings. The fact that different parts of the truth were highlighted in different contexts does not establish that anything untruthful was said.

Within several days of participating in the January 6 riot, Mr. Staples started to question everything that he had been told about the 2020 election. It did not take him long to see that former

---

[2] This is in sharp contrast to Ruben Reyna's conduct during his interview with the FBI. Mr. Reyna did not admit he had entered the building until after he was confronted with a picture of himself inside the Capitol. In other words, he did not tell the truth until he learned that the FBI had clear evidence that he was lying. The defendant asks the court to take judicial notice of the government's sentencing memorandum in *U.S. v. Reyna,* case number 23-cr-350 (CKK), Document 25, at page 9, where this fact is discussed.

3

President Trump had manipulated his supporters into believing a lie.[3] He, like so many other Americans, had believed that lie. He regretted his actions almost immediately and continues to regret them. He has said that he is dreading the day he will have to explain his actions to his daughter. He can think of no justification for his conduct. He not only deleted his Facebook account shortly after being doxxed, but he deleted his Twitter and LinkedIn accounts as well. Mr. Staples has not reopened those accounts in the years since. He came to understand that the algorithms controlling the newsfeeds he was receiving had kept him from a full understanding of what was going on in the country. He has had no involvement in politics since January 6, 2021. Unlike so many people who supported Trump in 2020, he does not currently believe the election was stolen. He resents the fact that he was deceived into believing that it was.

      The government also spends a great deal of time discussing the fact that Mr. Staples told the FBI he thought some of the police officers might have let people into the Capitol or that some of them may have been antifa plants. When he made those statements, he was talking about what he believed on January 6, not what he believed at the time of the debriefing. He knew those beliefs were mistaken, but he was honest in recounting his thought processes at the time. Again, the government's emphasis on such minutiae makes clear that they have no evidence that Mr. Staples continues to harbor any beliefs that might incline him to similar conduct in the future.

      Mr. Staples accepted his plea offer at the earliest possible opportunity. He forthrightly admitted his involvement to the court and to the probation officer who conducted the presentence interview. The government criticizes him for couching the regrets he expressed to the probation

---

[3] This fact was the basis for the second impeachment of Trump in 2021.

officer in terms of the personal effects on his family, rather than on the effects on the country. Apparently the prosecutor does not question whether Mr. Staples is sorry for his actions; he faults him for not being sorry for the right reasons. The defense submits that it is perfectly understandable that a young husband and father would focus on those personal regrets shortly after being fired and learning that he would once again have to move his family thousands of miles in order to continue to support them – all as a direct result of his criminal conduct. Such personal pressures would tend to crowd political considerations out of most people's minds.

**The Sentencing Guidelines**

The government claims that it agrees with the sentencing guidelines calculation in the presentence report, but then misstates what the calculation is. It directs the court's attention to paragraphs 49-56 of the PSR and shows a total adjusted guideline level of 4 in its memorandum. In fact, the guideline calculation is to be found at paragraphs 49-58, and the total offense level is 2. The prosecution's summary leaves out the fact that the PSR deducted another two levels under § 4C1.1. It is troubling that the government would present a truncated version of the probation office's calculation as the entire calculation.

In its memo, the prosecution goes on to say that the court should depart upwards by two levels to negate the effects of § 4C1.1, while admitting that Mr. Staples clearly qualifies for the deduction. The government proposes this upward for the sole purpose of offsetting the two-level decrease mandated by § 4C1.1. This is an extraordinary suggestion with no support in the law.[4]

---

[4] The government cites to a case in which Judge Howell allegedly imposed that upward departure. The sentencing transcript alluded to is not available on the docket. Consequently, the defense cannot read the judge's reasoning nor respond to it, and the government did not provide the transcript. That oversight is of little moment. The defendant contends that there is no valid

5

§ 4C1.1 was adopted in 2023.  In its public comments on the proposed amendments for that year, DOJ raised no objection to the proposal to provide a two-level deduction from the offense level for certain defendants with zero criminal history points.[5]  But the U.S. Attorney's Office now asks the court to negate that guideline by imposing an unsupported upward departure, simply because it does not want the defendant to receive its benefit.  The court should decline that invitation.

**Sentencing Factors Under 18 U.S.C. § 3553(a)**

There is no question that the January 6 attack posed a grave danger to our democracy.  Mr. Staples does not defend his individual actions, much less the actions of the larger group.  At the time, he believed the lies told by the former president that the election had been stolen.  His presence in Washington was the result of that belief – a belief that he has long since discarded.  He has quit social media because he understands that those sites can quickly become echo chambers that present a false view of the world.

He would like to point out to the court, however, that his participation in the events was minimal.  He certainly entered the Capitol with the knowledge that he should not have.  He went through a broken window and saw the mob pushing the police officers inside.  There is no excuse

---

legal basis on which a district judge can depart upwards on the sentencing guidelines for the sole purpose of offsetting the clear dictates of another section of the guidelines.  To do so would be error.

[5] The defendant asks the court to take judicial notice of the "Proposed Amendments/Public Comment" to the United States Sentencing Commission's "2023-2024 Amendment Cycle," published at 88 FR 89142.  That publication can be accessed at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/202402/88FR89142_public-comment.pdf.  DOJ's comments begin at page 46 of the document.  The comments concerning the proposed § 4C1.1 begin at page 32 of the DOJ letter, which is page 77 of the overall document.  DOJ had some disagreement with the definition of "sex offense" in the guideline, but raised no objection to the amendment itself.

for his conduct. It was in recognition of the wrongness of his actions that he accepted the plea offer extended by the government. He never considered trying to defend this case, indicating to counsel shortly after retaining her that he was guilty and he intended to plead guilty. But he would ask the court to note that he stayed inside for a total of 80 seconds. He went only a few feet into the Capitol, remaining by the exterior wall until he left. He did not participate in any violence and did not engage with any police officers.

His personal characteristics show that he is a stable family man. He works hard and supports his family. He has avoided all political activity since January of 2021. He does not believe that the election was stolen and understands that Trump manipulated his followers into false beliefs. He has no substance abuse problems or mental illnesses. He submits that all those factors are ample proof that specific deterrence is not required in this matter. He had never been arrested for any offense before this incident, and there is no reason to believe that he will re-offend.

In addition, he has already suffered significant punishment as a result of his actions, even before the court imposes sentence. Beyond the doxxing – which will endure on the internet for a long time – he lost his job in Alaska and had to move his family thousands of miles for the third time in less than four years. He is deeply ashamed of his actions and is already concerned about how he will explain them to his daughter when she is old enough to have a discussion about it.

In addition, it was two-and-a-half years between his interview with the FBI and the bringing of charges in this case – a lengthy period of time during which he and his family lived with the anxiety of wondering what charges might be brought and when. Living with such uncertainty usually engenders more stress than the actual receipt of bad news does.

The government argues that the court should order 14 days of incarceration for Mr. Staples

because that is the sentence that Reyna received. It says that to impose a lesser sentence on the defendant would result in an unwarranted sentencing disparity. That argument is meritless. The two men were convicted of the same offense, but the similarities end there. Reyna had a total offense level of 4 and one point on his criminal history score. Mr. Staples has a total offense level of 2 and a criminal history score of zero. Yes, they end up with the same guideline range of 0-6 months, but that does not answer the question of where in the range the court should land. The court does not sentence offenses; it sentences people. The differences in the personal characteristics of the two men call for different sentences.

### Conclusion

The defendant respectfully prays that the court impose a sentence of one to two years of probation, $500 in restitution, and 40 hours of community service.

Respectfully submitted,

/s/Cheryl D. Stein
Cheryl D. Stein #256693
1824 N. Capitol Street, N.W. #1
Washington, D.C.  20002
(202) 388-4682
cdstein3@verizon.net
    Counsel for Eric Staples